(C.D. 4222)

MICHAUD, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided May 25, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Susan C. Cassell*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves an importation from Japan of certain key holders that were invoiced variously as "Select-A-Key Chains," "Cum-A-Part Key Chains," and "Brass Key Holder, Take-A-Part type." The imported key holders consist of two key rings, each of which is connected to a single rectangular metal bar by a small metal ring. The rectangular metal bar itself consists of a three-pronged section which interlocks into a hollow section. These two sections of the bar can be separated by depressing a prong and applying pressure, thus separating the two key rings. In this way, a set of keys attached to one key ring can be quickly separated from another set that is attached to the other key ring.

The imported key holders were classified by the government under either item 740.35 or item 740.37 of the tariff schedules (depending on the date of entry)[1] as jewelry and other objects of personal adornment, not of precious metal, and assessed duty of 55 percent.

Plaintiff insists that this classification is erroneous and contends that the imports are properly classifiable according to their component material of chief value, which is claimed to be brass. Consequently, they are claimed to be properly dutiable at 15 percent plus 1.275 cents per pound under item 657.35 which covers articles of copper, not coated or plated with precious metal.[2] In the alternative, plaintiff claims the articles are dutiable at the rate of 19 percent under item 657.20 as articles of iron or steel.

It is, of course, basic that in a classification case the claimant must not only prove that the collector's classification was erroneous, he must also establish the correctness of his own affirmative claim. In the present case, we need not consider whether or not the classification is erroneous. For on the record before us, it is apparent that plaintiff has failed to establish the correctness of its claimed classification under item 657.35 or item 657.20.

The proper method of determining component material of chief value is to ascertain the costs to the manufacturer of the separate parts of the article at the time they are ready to be combined into the completed article. E.g., *Plastic Service Co. v. United States*, 63 Cust. Ct. 528, 530, C.D. 3947 (1969), and cases cited. In the present case, plaintiff has presented no evidence as to the costs to the manufacturer of the separate parts of the imported article at the time they were ready to be assembled and combined into the completed article. Instead, plaintiff presented testimony of an individual who had been

---

[1] The Technical Amendments Act of 1965, 79 Stat. 947, renumbered item 740.35 to 740.37 and made other changes not here material.

[2] The pertinent provisions concerning this claim by plaintiff are as follows:

Subpart C, Part 2, Schedule 6, TSUS:

\* \* \* \* \* \* \*

2. For the purposes of the tariff schedules, the following terms have the meanings indicated:

\* \* \* \* \* \* \*

(ii) brass is an alloy of copper (not including nickel silver) in which zinc is the principal alloying element, with or without small quantities of other elements;

\* \* \* \* \* \* \*

In the absence of context which requires otherwise, the term "copper", wherever used in the tariff schedules, includes alloys of copper.

\* \* \* \* \* \* \*

Subpart G, Part 3, Schedule 6, TSUS:

| | Articles of copper, not coated or plated with precious metal: | |
|---|---|---|
| 657.30 | Of copper, other than alloys of copper; of nickel silver or of cupro-nickel _____ | \* \* \* |
| 657.35 | Other _____ | 1.275¢ per lb. +15% ad val. |

a manufacturing jeweler for 40 years, the last 15 years of which have been as an employee of plaintiff, in which capacity he made and assembled jewelry. His testimony, in essence, was that the entire middle portion of the import—i.e., the rectangular metal bar consisting of the three-pronged section and the interlocking hollow section—is made of chrome-plated brass. Beyond that, the witness—who was not a metallurgist—believed that the two rings on which the keys are held "would be probably steel," and that he did not believe the two small rings which connect the key rings to the interlocking bar portion are made of brass although he was not sure.

This testimony, it must be concluded, is obviously insufficient to establish that the key holders are in chief value of brass. For one thing, the testimony indicated that brass, chromium and steel could be components of the imported articles. Second, the testimony was marked by uncertainty as to the primary issue concerning component material of chief value. In sum, the evidence, at best, showed that the importation consisted of at least three component materials but then failed to show which was the one of chief value. Plainly, in such circumstances, the witness' initial statement at trial that the importations "are made of brass chromium plated"—which statement he later modified by stating that only the middle portion was made of brass—is entitled to little probative weight. See e.g., *Bradlow, Inc.* v. *United States,* 66 Cust. Ct. 333, C.D. 4211 (1971) ; *Plastic Service Co.* v. *United States, supra,* 63 Cust. Ct. 528. Nor does a casual examination of the importation reveal the component material of chief value. The rings and flat surface are all silver in color, except the portion on the flat surface scraped by plaintiff's witness to expose a yellow-colored metal. Thus, it is not apparent from a casual examination what the component material of these key holders actually is, let alone that the component material of chief value is brass. See e.g., *Bradlow, Inc.* v. *United States, supra.*

We turn now to plaintiff's claim in the alternative that the key holders should have been classified under item 657.20 as articles of iron or steel. However, there is a complete absence of any evidence that the importations were composed chiefly in value or weight of iron or steel. Indeed, there is not even probative evidence that iron or steel is one of the components. Thus, this claim, too, must fall.

The protests are overruled. Judgment will be entered accordingly.