**C. S. EMERY & COMPANY, Inc.**

v.

**UNITED STATES.**

**C.D. 3426; Protest 65/16294–4329.**

United States Customs Court, Third Division.

April 24, 1968.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and James S. O'Kelly, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Arthur H. Steinberg, New York City, trial attorney), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

The relatively broad issue in this protest is whether entry merchandise described as "Asphalt Saturated Asbestos Felt Perforated" should be classified as an article of asbestos, not specially provided for, dutiable at 9 per centum ad valorem, under TSUS item 518.51, as it was in liquidation, or, more properly, as building paper or building paper-felt, dutiable at 5 per centum ad valorem under TSUS item 251.05, as plaintiff claims. If the merchandise is both, that is, an article of asbestos and building paper or felt, then it will be classified as building paper or felt which is rela-

tively more specific than the provision for articles of asbestos, not specially provided for. C. J. Tower & Sons v. United States, 19 Cust.Ct. 125, Abstract 51871.

Before reciting the text of items 251.05 and 518.51, it will help to understand that the claimed item 251.05 is one of several classifications under TSUS schedule 2, part 4, title "Paper, Paperboard, and Products Thereof," subpart B, "Paper and Paperboard, in Rolls and Sheets, Not Cut to Size or Shape." As defined in part 4, headnote 2(b) (i), the term "cut to size or shape" means "paper or paperboard without slits, holes or other perforations which is * * * in rolls or strips not exceeding 6 inches in width." Subpart B in a subheadnote (1) recites that it is intended to cover "paper and paperboard, in rolls and sheets, not cut to size or shape, and not made up into articles finished or not finished. * * *"

The text of the two tariff items in dispute is as follows:

251.05   Building papers and building paper-felts, whether or not coated or saturated ...................5%   ad   val.

518.51   Articles not specially provided for, of asbestos ...9%   ad   val.

---

The official papers are in evidence. (R. 11.) On trial, plaintiff adduced testimony and put a number of exhibits in evidence. Defendant presented no evidence.

It is stipulated that the imported merchandise is in chief value of asbestos. (R. 7.) It is also undisputed that the merchandise is a perforated building material, saturated with asphalt, imported in rolls "four square" (144 foot lengths) and "three square" (108 feet in length), 36 inches in width, as represented by exhibit 1. The merchandise being perforated and 36 inches in width is not, therefore, cut to size or shape, as defined in part 4, supra, and meets that specification in subpart B. It is irrelevant under item 251.05 that the merchandise is coated or saturated.

Paul Frederick Theobald, vice president and plant manager of The Philip Carey Manufacturing Company, Ltd., Canada, the firm which manufactured and exported the entry merchandise testified. His qualifications are unchallenged. Mr. Theobald stated that the imported asbestos product is produced from raw materials, primarily asbestos fibers and a starch type binder, used with certain organic materials to strengthen the product, namely, sulphate pulp and scrap roofing papers. The asbestos fibers are made into a slurry to which starch is added. A separate slurry is made of the sulphate pulp and scrap roofing paper. Mr. Theobald testified that the two slurries are mixed in proportion and placed in a holding tank. As needed, the mixed slurry is drawn from the holding tank and put through a paper-making machine. The processing of the slurry in the paper machine, as described by Mr. Theobald, is substantially that to which we shall refer in the definition of paper, cited infra. The sheet formed by the paper machinery, said Mr. Theobald, is put through a saturating bath of hot asphalt. The sheet is lined to aid alignment when laid on a roof. It is also perforated to prevent bubbling and blistering when used on a roof.

Mr. Leslie A. Kautz, marketing manager for The Philip Carey Manufacturing Company, Perth Amboy, New Jersey, to whom this imported merchandise was consigned, also testified. The trade name of the imported product, said Mr. Kautz, is Fiberock, but it is also known as roofing paper, tar paper, building paper, and roofing felt. He had seen the product

used frequently .in every state of the United States, except Hawaii, and testified that it is used as an underlay for basement flooring, as waterproofing for exterior foundation walls, as a separator between a subfloor and finished hardwood floor, as sheathing paper, and most frequently in roof construction. The imported merchandise also has, he said, marginal uses as insulation wrapped around pipe, and as a lining in the paint spray booths of automobile plants.

Defendant's sole contention is that, by its own terms, TSUS schedule 2, part 4, is intended to cover "paper" and "paperboard." This limitation alone, says defendant, is enough to preclude classification of merchandise in chief value of asbestos under TSUS item 251.05. What defendant is saying, of course, is that the imported merchandise is not "paper."

Aside from the part 4 reference, defendant makes no affirmative argument in support of the contention. We note that defendant's contention is somewhat the reverse of the argument defendant made in Floral Arts Studios and Frank P. Dow Co., Inc., et al. v. United States, 49 Cust.Ct. 43, 51, C.D. 2359, where it argued against the probative value of testimony by witnesses who "were not familiar with such specialized types of paper as *asbestos,* bakelite, and diaphragm papers * * *" [emphasis added].

■ We find and hold that the imported merchandise is building paper or building paper-felt, dutiable under TSUS item 251.05, as plaintiff claims.

Webster's Third New International Dictionary, 1966, defines the term "paper" and "building paper" as follows:

paper la (1): a felted sheet of usu. vegetable but sometimes *mineral* or synthetic fibers laid down on a fine screen from a water suspension [Emphasis added.]

building paper n: paper used for insulation (as in walls, roofs, and between floors)

Our court of appeals cited the definition of "paper" in the New English Dictionary on Historical Principles, Oxford (Clarendon Press), 1909, volume 7, as follows:

1. A substance composed of fibers interlaced into a compact web, made * * * from *various fibrous materials* * * * which are macerated into a pulp, dried, and pressed * * *. [Floral Arts Studio, et al. v. United States, 46 CCPA 21, 26, C.A.D. 690 Emphasis added.]

■ The most widely accepted definition of paper is that of a product made in accordance with a general process of matting fibers from a water suspension. Floral Arts Studios and Frank P. Dow Co., Inc., et al. v. United States, 49 Cust. Ct. 43, C.D. 2359, appeal dismissed, United States v. Floral Arts Studios, etc., 50 CCPA 97. Among the industrial uses of asbestos the Encyclopaedia Britannica, 1947 edition, volume 2, page 497, recites that *"asbestos papers* are used where dampproof and fireproof coverings are required" [emphasis added]. The Explanatory Notes to the Tariff Classification Study, taken from reports of the United States Tariff Commission, relating to the provisions of the Tariff Schedules of the United States (TSUS), schedule 2, at page 89, also explain that:

Item 251.05, building papers and paper-felts, would be dutiable at 5 percent ad valorem, which is the same rate provided for such products in paragraph 1402. The language, however, has been clarified to avoid possible conflict with the provisions for textile felts in part 4C of schedule 3.

Building papers are tough, strong papers used in general construction work. Building paper felts are used in

walls and floors to deaden sounds and to reduce drafts or as an underlay for composition or processed floor coverings. The papers and paper-felts are covered by item 251.05 whether or not they have been coated or saturated.

As plaintiff points out, the most persuasive authority that asbestos paper was intended to be classified under item 251.05 is the conclusion of the Senate Finance Committee (on a request to amend TSUS item 251.05 to include asbestos paper) that:

> A number of additional suggestions were presented for amending the tariff law but although the committee was sympathetic, *it did not adopt them because it felt the law already covered the situations involved.* Let us describe them.
>
> *   *   *   *   *   *
>
> *The next relates to asbestos roofing paper. A request was made* of the committee that TSUS item 251.05 *be clarified to emphasize that building papers* and *building paper-felts having an asbestos base are included in this item. The committee believes the present language already makes this clear. Therefore an amendment is unnecessary.* As a matter of fact, data that were presented to the committee showed this paper was being entered at the 5-percent rate under item 251.-05. [Congressional Record, August 12, 1965, at page 20214. Emphasis added.]

We have examined the imported merchandise as represented by exhibit 1. It has the look and feel of heavy duty tar paper. The record and relevant authorities support that, as a matter of fact, it is paper, to wit, building paper-felt and that, as a matter of law, it is properly dutiable under TSUS item 251.05, as claimed.

The protest is sustained. Judgment will be entered accordingly.

RICHARDSON, J., concurs.