(C.D. 4467)

RICHARD NELSON COMPANY
ARTHUR J. FRITZ & COMPANY } *v.* UNITED STATES

Court No. 66/19050

(Decided August 22, 1973)

*Glad & Tuttle* (*George R. Tuttle* and *John McDougall* of counsel) for the plaintiffs.

*Irving Jaffe*, Acting Assistant Attorney General (*Gilbert Lee Sandler*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Judge: The merchandise involved in this case, described on the invoices as "Black Sheathing Roofing Felt," was assessed with duty at 20 per centum ad valorem under item 355.05, Tariff Schedules of the United States, which item includes nonwoven fabrics, felts, and bonded fabrics, whether or not coated or filled. It is claimed to be dutiable at 5 per centum ad valorem under item 251.05, which covers building papers and building paper-felts, whether or not coated or saturated.

The pertinent provisions of the tariff schedules are as follows:

Schedule 3 – Part 4 – Subpart C

Subpart C headnotes:

    \*      \*      \*      \*      \*      \*      \*

2. For the purpose of the tariff schedules—

(a) the term "coated or filled", as used with reference to textile fabrics and other textile articles, means that any such fabric or other article has been coated or filled (whether or not impregnated) with gums, starches, pastes, clays, plastics materials, rubber, flock, or other substances, so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not the color has been changed thereby; and

(b) the term "nonwoven fabrics" refers to fabrics made of matted textile fibers which are not in the form of yarns, but includes needle-punched felts comprised of fibers punched through a base fabric.

3. For the purposes of determining the component fibers of chief value in coated or filled fabrics and articles thereof, the coating or filling substances shall be disregarded.

---

Webs, wadding, batting, and nonwoven fabrics, including felts and bonded fabrics, and articles not specially provided for of any one or combination of these products, all the foregoing, of textile materials, whether or not coated or filled:

355.05       Of vegetable fibers_____ 20% ad val.

Schedule 2 – Part 4

Part 4 headnotes:

1. This part covers certain paper-making materials, paper and paperboard, and articles of pulp, of paper, and of paperboard, \* \* \*.

    \*      \*      \*      \*      \*      \*      \*

Subpart B headnotes:

1. This subpart covers paper and paperboard, in rolls and sheets, not cut to size or shape, and not made up into articles finished or not finished. \* \* \*

    \*      \*      \*      \*      \*      \*      \*

251.05 Building papers and building paper-felts, whether or not coated or saturated_____ 5% ad val.

At the trial, William Farwell, the import specialist who handled the classification of this merchandise, testified that he classified it as a nonwoven fabric or a felt or a bonded fabric. He was not prepared to say which one.

Rudolph Senasac, import manager of the Richard Nelson Company, testified that he had ordered the merchandise from Engert & Rolfe, Ltd. of London, England, and identified a sample as illustrative of the merchandise except that it was dried out. It was received in evidence as exhibit 1. In appearance, it is a thin sheet of compressed matted material, black in color. The witness had sold such merchandise to roofers who applied the material to roofs and to the wholesale building materials people who sold to the roofing trade. It is generally sold as roofing felt. The terms "felt roofing," "sheathing felt," "roofing paper felt" and "flax roofing felt" are also used.

The witness said he had seen the product used on roofs around chimneys, vents, pipes, and firewalls, and for reinforcing roofs. It is used in conjunction with domestic paper felt for reroofing. It also serves as a sheathing when cement sidewalks are relaid, to prevent water from seeping into the basement of a building.

Walter Harrington, territory manager in the roofing products line for Certain-Teed Products Corp., testified that he has been inspecting roofs for the 16 years he has been with the company and had worked with a building materials firm prior to that. He had observed the application of roofing in the San Francisco area, the Northwest, and in Minnesota and adjacent states. He had seen the imported merchandise used to reinforce and strengthen roofing assemblies. It is used with hot asphalt as reinforcement over an original roofing assembly.

There was received in evidence a sample, marked exhibit 2, which the witness said was made of 50 percent paper stock and 50 percent shredded wood fiber. It is made by a rough paper process wherein a "rug mat" rather than a "fine screen" is used in connection with water suspension.

The witness said exhibits 1 and 2 are similar, being matted fabrics, saturated with asphalt or coal tar. Both are roofing felts and are used for the same purposes.

He said that "roofing felt" was a standard term in the industry, as were the terms "roofing paper," and "sheathing felt." When asked the meaning of the term "felt" in the roofing industry, he stated:

> Well, the way we interpret it is an assembly or matted material. It's the basis for absorbing the asphalt and becoming a roofing sheathing. It can be made of various products. In this case it's flax and hemp. We use a paper stock and wood. It can be fiberglass matting or asbestos materials. Loose fibers, matted together to form a light, soft type of base that will absorb an asphalt material.

The material must be impregnated with coal tar or asphalt to protect the fibers and to absorb the moisture.

Mr. Harrington stated the term "building paper-felt" is not commonly used by the industry. The normal terms are "dry felt" and "saturated felt." He said the term "building paper-felt" would include the imported product and that building paper is used in many ways in which roofing felts are used. He regarded the terms "building paper" and "building paper-felt" as being the same, but he said that the term "building paper" was more commonly used. It is a broad term including a number of products used in building construction. It comprehends products used for other than roofing such as sheathing paper and deadening felt. In his opinion, the term "building paper-felt" includes all of the felted materials, dry and saturated, used on roofing.

At the trial, the record in the case of *C. S. Emery & Company, Inc.* v. *United States*, 60 Cust. Ct. 465, C.D. 3426, 284 F. Supp. 932 (1968), was incorporated herein.

Subsequent to the trial, the submission of the case was set aside and a commission issued to take the testimony of E. C. Garsed, Works Director, Engert & Rolfe, Ltd., London. Mr. Garsed stated that the merchandise involved herein is made from flax or jute waste or a combination of both. The material is received in pressed bales and is opened up on a special type of carding machine until a loose mass of uncontrolled individual strands of jute or flax is produced. The strands are then fed into a machine where they are subjected to the tearing action of the teeth of a cylinder revolving at about 1000 revolutions a minute, and are then flung onto a perforated roller equipped with suction which causes the strands to collect on the cylinder. At a certain point the suction is stopped and the mass of fibers falls off and is collected by a pair of nip rollers which push it forward on a plate into squeeze rollers which have attached to them a trough of hot pitch which is applied as the mass goes through the rollers. The rollers squeeze the pitch into the jute or flax strands and then dry the material by squeezing out any excess. The material is then taken over a series of rollers and formed in vertical loops. As it moves along the loops, cooling takes place, the pitch solidifies, and a fairly tough material is produced. Pressure is applied during the process to compress the fibers into a sheet of black sheathing felt.

According to the witness, prior to the passage of the material through hot pitch, it consists of a mass of uncontrolled, unstable, single fibers, having no compressive or tensile strength. It is extremely loose, not matted in any way, and cannot be handled except as it lies on the plate by being pushed or pulled by the nip rollers. The purpose of applying the pitch is to stabilize the material and give it strength and water-proofing qualities.

He stated that the machine used was not a feltmaking machine, but was built specially to make black sheathing felt, which is used as a membrane on buildings between wood or concrete and a finishing cap of asphalt or bitumen. The merchandise is not marketed as "felt," but as "black sheathing felt."

The fundamental issue in this case is whether the merchandise was properly classified under item 355.05, as nonwoven fabrics, including felts and bonded fabrics, or is dutiable under item 251.05, as building paper-felts.

In classification cases, the burden rests on the plaintiff to overcome the presumption of correctness attaching to the classification and to establish that the claimed classification is correct. *United States* v. *Victoria Gin Co., Inc., et al.*, 48 CCPA 33, C.A.D. 759 (1960) ; *Hayes-Sammons Chemical Co.* v. *United States*, 55 CCPA 69, C.A.D. 935 (1968) ; *Nomura (America) Corp.* v. *United States*, 58 CCPA 82, C.A.D. 1007, 435 F.2d 1319 (1971).

Plaintiffs claim here, however, that there is no presumption of correctness attaching to the classification on the ground that item 355.05 covers a number of articles and the specific classification was not shown, citing *Broadway-Hale Stores, Inc.* v. *United States*, 63 Cust. Ct. 194, C.D. 3896 (1969).

In that case it was the Government's position at the first hearing that the merchandise had been classified under the subdivision of paragraph 1529(a), Tariff Act of 1930, as modified, which covered ornamented articles, and at the second hearing that it had been classified under the subdivision covering articles wholly or in part of fringes. The court held that since duty had been assessed under a paragraph having numerous subdivisions at a rate provided for in at least two of them, there was no presumption that the merchandise was classified under any one of them.

In the instant case, the import specialist testified that the merchandise was classified as a nonwoven fabric, a felt, or a bonded fabric. In view of the language of the statute, "nonwoven fabrics, including felts and bonded fabrics," this classification is sufficiently specific for the presumption of correctness to apply.

In any event, the burden still rests on plaintiffs to establish that the claimed classification is correct. *United States (Index Industrial Corp., Party in Interest)* v. *National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809, 318 F.2d 737 (1962) ;*United States* v. *Magnus, Mabee & Reynard, Inc.*, 39 CCPA 1, C.A.D. 455 (1951).

Plaintiffs claim that the imported merchandise is properly classifiable under item 251.05, as building paper-felt; that said item was intended to include products described in paragraph 1402, Tariff Act of 1930, as sheathing paper, roofing paper, deadening felt, sheath-

ing felt, roofing felt, or felt roofing, except the felts covered by item 355.05; that this merchandise is not such felt. Defendant contends that item 251.05 is limited to merchandise which is paper and that the merchandise herein is not paper and cannot be classified thereunder.

Pertinent to the discussion are the following definitions:

Webster's Third New International Dictionary (1966 edition):

felt. 1a: a cloth constructed usu. of wool and fur fibers often mixed with natural or synthetic fibers by the interlocking of the loose fibers through the action of heat, moisture, chemicals, and pressure without spinning, weaving or knitting * * * 3 * * * a: a heavy paper of organic or asbestos fibers impregnated with asphalt and used in building construction (as under shingling) * * *
c: sheets of semirigid pressed fiber insulation used under the sheathing of a building or between rough and finish flooring * * *

paper 1a (1): a felted sheet of usu. vegetable but sometimes mineral or synthetic fibers laid down on a fine screen from a water suspension * * *

building paper: paper used for insulation (as in walls, roofs, and between floors)

Funk & Wagnalls New Standard Dictionary (1956 edition):

felt 1. Properly, a fabric made by interlocking or compacting wool, fur, or hair, or a mixture thereof, by rolling or pressure, without weaving, often with the aid of glue and heat; * * *.

*       *       *       *       *       *       *

roofing-f. (a paper, usually impregnated with tar or pitch, used to cover flat or slightly sloping roofs).

Kirk-Othmer, Encyclopedia of Chemical Technology, vol. 9, p. 812:

Paper is the term generally applied to various kinds of "matted or felted sheets of fiber (usually vegetable but sometimes mineral, animal, or synthetic); formed on a fine wire screen from a water suspension."

In *C. S. Emery & Company, Inc.* v. *United States, supra*, this court said:

The most widely accepted definition of paper is that of a product made in accordance with a general process of matting fibers from a water suspension. *Floral Arts Studios* and *Frank P. Dow Co., Inc., et al.* v. *United States*, 49 Cust. Ct. 43, C.D. 2359, appeal dismissed, *United States* v. *Floral Arts Studios, etc.*, 50 CCPA 97. * * *

Under the authorities cited and the record presented, the merchandise here is not a paper or paper product.

However, plaintiffs claim that item 251.05 is not limited to paper products, citing a statement from the Tariff Classification Study of November 15, 1960, and paragraph 1402, Tariff Act of 1930.

In the Tariff Classification Study, schedule 2, p. 89, it is stated:

> Item 251.05, building papers and paper-felts, would be dutiable at 5 percent ad valorem, which is the same rate provided for such products in paragraph 1402. The language, however, has been clarified to avoid possible conflict with the provisions for textile felts in part 4C of schedule 3.
>
> Building papers are tough, strong papers used in general construction work. Building paper felts are used in walls and floors to deaden sounds and to reduce drafts or as an underlay for composition or processed floor coverings. The papers and paperfelts are covered by item 251.05 whether or not they have been coated or saturated.

The pertinent portion of paragraph 1402, Tariff Act of 1930, reads:

> * * * sheathing paper, roofing paper, deadening felt, sheathing felt, roofing felt or felt roofing, whether or not saturated or coated, * * *.

Plaintiffs claim that the above evidences an intent to include in item 251.05 all articles chiefly used and commercially described as roofing felt, felt roofing, and sheathing felt, with the exception of certain textile felts provided for in part 4C of schedule 3. It contends that the imported merchandise does not come within the exception because it was not made by the normal felting process.

Whether or not paragraph 1402 included roofing felts which were not of paper need not be determined here. Former schedules have proper use in interpreting current ones only to resolve ambiguities not to raise them. *F. L. Smidth & Company* v. *United States*, 56 CCPA 77, 80, C.A.D. 958, 409 F.2d 1369 (1969).

Item 251.05 is by its terms limited to building *paper* and building *paper*-felts. Headnote 1 to schedule 2, part 4, states that said part covers paper-making materials, paper and paperboard, and articles of pulp, paper and paperboard, and headnote 1 to part 4B (in which item 251.05 appears) states that subpart covers paper and paperboard in rolls and sheets. This language is clear and unambiguous on its face and needs no construction; hence no need to resort to extraneous aids. *Package Machinery Co.* v. *United States*, 41 CCPA 63, 68, C.A.D. 530 (1953), and cases cited.

The statement in the Tariff Classification Study was intended to make clear that building felt of paper was to be classified under item 251.05 but that other felts, including roofing felt of other materials, were provided for in part 4C of schedule 3. The term "felt," as the above definitions indicate, includes felts made by the normal felting process, paper felts, and other fiber insulation. According to Mr. Harrington, in the roofing industry, it means "an assembly or matted material" made of various products. *Cf.* the Tariff Information Survey on

paragraphs 320 and 321 of the Tariff Act of 1913, where it was pointed out that domestic roofing felt had its origin on a cylinder paper machine, but that imported roofing felt was made by another process. It was suggested that tariff provisions for roofing felt not made on a paper machine be separate from those for materials used for the same purpose but made on a paper machine. The Tariff Schedules of the United States have accomplished this.

An analogous situation was involved in *M. H. Garvey Company* v. *United States*, 58 Cust. Ct. 530, C.D. 3040 (1967), where it was held marking devices of rubber were not classifiable as decalcomanias under paragraph 1406, Tariff Act of 1930, since that paragraph was limited to articles in chief value of paper. The court said (p. 535) :

> It is quite evident from these authorities that, insofar as the term "decalcomanias" is used in paragraph 1406, *supra*, it means an article *in chief value of paper* consisting of pictures, designs, or lettering on certain kinds of *paper* intended to be transferred to another surface. The marking devices now before us are printed on rubber and are in chief value of rubber. Therefore, they do not meet the particulars established by the statute as criteria, and may not be classified thereunder, whether or not they are considered decalcomanias by the trade and are used for the same purposes as the paper type transfer markings. Paragraph 1406 does not cover all marking devices but only those which are "articles, composed wholly or in chief value of paper lithographically printed in whole or in part * * * decalcomanias in ceramic colors, * * *; all other decalcomanias, except toy decalcomanias * * *." This language effectively eliminates the merchandise involved herein. [Emphasis quoted.]

Likewise, item 251.05 does not cover all roofing felt but only that which is building paper-felt. Products of other materials, even if roofing felt or chiefly used as roofing felt, may not be classified under item 251.05, unless such merchandise is not enumerated elsewhere and the similitude clause is applicable. This is not the case here.

Item 355.05 covers not only felt but bonded fabrics. While the merchandise involved herein may not be felt made by the normal felting process, it is a bonded fabric in its imported condition. Plaintiffs claim that in order for merchandise to be classified under item 355.05, it must exist as felt before it is coated or filled. The language of that item, however, is not such as calls for the application of the preexisting materials doctrine. It is merely descriptive of the merchandise provided for, irrespective of whether it was made by a series of processes or in one operation. *Cf. Jacques Isler Corp.* v. *United States*, 58 CCPA 22, C.A.D. 999, 433 F.2d 1399 (1970).

The merchandise here falls within the description "nonwoven fabrics, including felts and bonded fabrics, * * * whether or not coated or filled" and is therefore properly dutiable under item 355.05.

42

For the reasons stated, the protest is overruled. Judgment will be rendered accordingly.